### Application of SUPERIOR STUDENT TRANSPORT, Inc.

Docket No. 9119-CCB, Order No. 8418.

Florida Public Service Commission.

April 23, 1969.

John A. Sutton, Orlando; and Bobby Wombles, Winter Park, for the applicant.

James E. Wharton, Orlando, for Tamiami Trail Tours, Inc., protestant.

Wayne K. Ramsay, Jacksonville, for Greyhound Lines, Inc., protestant.

John G. Baker, Orlando, for Orlando Transit Co., protestant.

Chairman WILLIAM T. MAYO, Commissioners JERRY W. CARTER and JESS YARBOROUGH participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to notice, the commission by its duly designated examiner, Harold E. Smithers, held a public hearing on this matter at Winter Park on October 15 and 16, 1968.

The examiner's report and recommended order was duly served on all of the parties. Exceptions to the recommended order were filed with the commission, as well as a reply thereto. Oral argument was heard on said exceptions and reply on April 1, 1969. The entire record herein, including the application, the testimony adduced at the public hearing, the exceptions and reply thereto, and oral argument heard thereon, has been examined by the full commission. After due consideration, the commission now enters its order in this cause.

This application as originally filed was for contract authority. It was subsequently amended to a common carrier application for, in effect, charter rights. After notice of hearing the protestants filed their motion to dismiss, followed by the applicant's request for postponement of that hearing, which was granted. Thereafter, the application was further amended and the matter renoticed for hearing. At the outset of the hearing, the applicant waived the right to charter rights, if any attached, under §323.14(1), Florida Statutes, should the amended application be granted. The application as finally heard is as follows —

> On the amended application of Superior Student Transport, Inc., for a common motor carrier certificate authorizing transportation of passengers, to-wit: children, their chaperones and supervisors, attending private or parochial school-sponsored related activities and participants in the youth development and educational programs of Boy Scouts of America, the Young Men's Christian Association, and similar civic, church, charitable or religious organizations, in special operations from Orange and Seminole counties to a common destination at any point in Florida over the shortest and most practical routes between such origins and destinations, in round trip transportation only. The applicant waives any or all charter rights.

In substance, Superior seeks authority to transport children on an individual ticket basis from Orange and Seminole counties to children-orientated activities at any point in Florida.

During the course of the hearing the protestants contended that (1) the commission cannot grant the authority sought either as special operations or as charter denominated as special operations, (2) the proposed use of buses painted school bus chrome is not permitted and, (3) authority to transport "chaperones and supervisors" would permit the transportation of adults without regard to the principal business of transporting children. The disposition of these matters at this point would be helpful and will be considered in that order.

The "special operations" was first noticed by the commission in Turfway Lines, Inc., docket no. 8161-CCB, order no. 7626 and Wylly's Sportsman, Inc., docket no. 8710-CCB, orders nos. 7605 and 7605-A, more particularly found in National Passenger Tariff No. A-1000 (Rule 12). In Turfway and Wylly's, supra, the commission approved the sporting events service and found it to be the same, although over irregular routes, as that contained in NPT A-1000. In Turfway and Wylly's cases no explanation was made, nor required by the commission, as to how they propose to provide the special operations (i.e. how tickets would be sold, routes to be used, computation of charges, etc.). Since the applicant waived charter rights and will sell individual tickets, the application is not for charter authority. Thus, the first contention has been previously disposed of by the commission.

The question of using buses painted school bus chrome involves an interpretation of §§234.041(1), 234.08(1), 317.692(1)(a), 320.08(5)(b) and 323.19(1)(a), Florida Statutes. All of these provisions pertain to the transportation of school age children in equipment readily recognizable by the use of the standard school bus chrome color. Considered as a whole, buses that cease to be used at all for transporting school children are required to have their color changed, however, there is no prohibition of the use of school buses for purposes other than transporting children between their homes and schools.

The protestants' third contention has some merit. As worded, the authority, if granted, could be interpreted to permit the transportation of a bus load of adults supervising one child. The commission does not believe that this is the intent of the applicant, yet recognizing the need for adult supervision. Therefore, in this regard the commission concludes that one adult chaperone or supervisor for each unit of ten children or fraction thereof per bus would constitute reasonable, sufficient adult supervision.

The applicant is qualified in all respects to provide the proposed transportation. Its principal function has been the transportation of children to and from school under the vehicle exemption provided in §323.29(1)(a), Florida Statutes. It proposes to use the same equipment (non-airconditioned, non-restroom equipped and non-reclining, standard school bus seats) to provide round trip transportation of children to the many activities sponsored for them. Although the applicant proposed to go to all points in Florida, the equipment used is not generally suitable for long distance transportation and the proposed tariff, as interpreted by the applicant, provides for only 300 miles. Children were defined as those attending the first through twelfth or thirteenth grade. In

reality, the application involves the clarification of possible questionable transportation performed under the exemption providing— "transporting children to and from schools," that is, does the vehicle exemption permit the transportation of school children to (1) basketball, football or baseball games, or on field trips, or (2) from church schools to activities relating to the church but not the school, or (3) from any school to any point to participate in an activity unrelated to a school function? There has been no official interpretation of this exemption. A fundamental principle of statutory construction is that exemptions are strictly construed and the person claiming the exemption must affirmatively show he comes within the exemption.

In support of the application, representatives of the YMCA, three church-sponsored private schools, the Girl Scouts, a recreational association, one church, and Singout Florida, appeared and testified. These groups have used the applicant's services to the extent possible because of their limited financial resources. Although they were generally aware of the protestants' services, those services had not been used except for long distances. They distinguished the services, equipment and charter rates available from the protestants, contending they do not need nor can they afford that type of transportation. In some instances the transportation is performed by private auto caravan which is considered too risky.

The protestants presented evidence generally relating to their authority, operations, facilities and equipment. All protested the application based on the possible dilution of their charter revenue and Orlando Transit contends they can provide the same transportation under their for-hire permit, which authorizes unrestricted, state-wide transportation for two of its buses. As to charter, the commission has previously stated that charter rights are not subject to protection (A-1 School Bus Lines, Inc., docket no. 8984-CCB, order no. 7765). Further, the commodious travel accommodations available from the protestants by charter is not the type of transportation sought by the supporting witnesses in his proceeding. Alhough Orlando Transit's for-hire permit could possibly fulfill the needs involved, the record does not disclose any active participation in the traffic.

From the foregoing, the commission concludes that the applicant has shown that public convenience and necessity requires the grant of the amended application and, that the grant of the application will have little, if any, adverse effect on the transportation facilities and transportation as a whole in the territory involved.

It is therefore ordered that the amended application of Superior Student Transport, Inc., P. O. Box 14282, Orlando, Florida, for a

certificate of public convenience and necessity be and the same is hereby granted and certificate of public convenience and necessity no. 1006 is hereby ordered issued to Superior Student Transport, Inc., authorizing the transportation of passengers, to-wit: children attending private or parochial schools or participating in school sponsored related activities, or participating in the youth development and educational programs of the Boy Scouts of America, the Young Men's Christian Association, and similar civic, church, charitable or religious organizations, together with one chaperone or supervisor per unit of ten children or fraction thereof per bus, in special operations from Orange and Seminole counties to a common destination lying north of state roads 72 and 70 and east and south of Suwannee River, over the shortest and most practical routes between such origins and destinations in round trip transportation only. All charter rights have been waived.

It is further ordered that the above authority be held in abeyance pending the applicant's compliance with this commission's rules pertaining to insurance, registration of equipment, road tax, and tariffs.

It is further ordered that the protestants' motion to dismiss, filed with the commission prior to the hearing, be and the same is hereby denied.